1999 OK CIV APP 71

**Dourames HENRY, Plaintiff/Appellant,**

v.

**The CITY OF MUSKOGEE and St. Joseph's Catholic Cemetery Association, Defendants/Appellees**

**No. 91,944.**

Court of Civil Appeals of Oklahoma, Division No. 1.

April 29, 1999.

Certiorari Denied June 22, 1999.

D.D. Hayes, Muskogee, Oklahoma, For Appellant.

Steve Cousparis, For Appellee, Muskogee, Oklahoma, City of Muskogee, John B. Jarboe, For Appellee, Tulsa, Oklahoma, St. Joseph's Catholic Cemetery Association.

## OPINION

CAROL M. HANSEN, Presiding Judge.

¶ 1 This is an appeal from the trial court's judgment denying Appellant, Dourames Henry (Henry), injunctive relief against Appellees, City of Muskogee (City) and St. Joseph's Catholic Cemetery Association (Church). In her Petition, Henry alleged [a] she was owner of certain lots in Greenhill Cemetery, located in Muskogee and operated by City, [b] Church purported to exercise control over part of Greenhill Cemetery, [c] Church threatened to remove a monument she had erected in honor of her husband for the reason it was inconsistent with the purposes of a Catholic cemetery, [d] the threatened action is in violation of 11 O.S.1991 § 26–105, which, among other things, provides no religious test may be imposed on ornamentation of graves or lots, and [e] City had unlawfully delegated its rule making power regarding Greenhill Cemetery to Church.

¶ 2 Henry asked the trial court to enter a temporary restraining order and temporary and permanent injunctions prohibiting Church from removing the monument and an injunction compelling City to protect her monument and to operate Greenhill Cemetery in accordance with Oklahoma law. After a hearing on Henry's motion for temporary injunction, the trial court denied her request for injunctive relief. The court, supporting its holding with a number of findings of fact and conclusions of law, held Church was acting within its authority as owner of St. Joseph's Catholic Cemetery when it demanded the removal of Henry's monument. Henry appeals from this judgment of the trial court.

¶ 3 Henry raises two issues on appeal. She first contends religious tests for monuments are prohibited by state law. As in the trial court, her contention is grounded upon 11 O.S.1991 § 26–105, which provides, in pertinent part:

> The [municipal] governing body may pass rules and ordinances to regulate, protect and govern the cemetery, ... The governing body may ... prescribe rules for enclosing, adorning, and erecting monuments and tombstones on cemetery lots; but no religious test shall be made as to the ownership of lots, the burial therein, or the ornamentation of graves or lots....

¶ 4 Section 26–105 is part of the Oklahoma Municipal Code, 11 O.S.1991 §§ 1–101 et seq. The intent of the Legislature as to a statute is ascertained from the whole act in light of its general purpose and objective. *First Community Bank of Blanchard v. Hodges,* 1995 OK 124, 907 P.2d 1047. It is clear from reading § 26–105, in the context of the Municipal Code, the Legislature intended the proscription against religious tests for burial and ornamentation to pertain only to *municipally owned* cemeteries. Further support for this conclusion is found in 8 O.S.1991 § 2, which provides that any cemetery organized or controlled by a church society or congregation *"shall be* managed and controlled as provided by its rules and bylaws." (Emphasis added).

¶ 5 The question then is whether St. Joseph's Catholic Cemetery is organized or controlled by Church so as to be managed by its own rules, or whether it is but part of a municipal cemetery regulated under § 26–105. The record reflects City, in 1903, purchased the ground upon which Greenhill Cemetery is located from the Creek Nation. On March 18, 1907, City conveyed approximately 5.2 of the 80 acres in Greenhill to Reverend Theo. Meerschaert, Bishop of Oklahoma, and his successors and assigns. The warranty deed conveying all right, title and interest in the property was authorized by City's Ordinance No. 273, which notes the land is to be used as "a cemetery by the Roman Catholic Congregation of Muskogee."

The ordinance indicates the land conveyed had already been in use by the congregation for that purpose.

¶ 6 The land conveyed in 1907 was still in use by St. Joseph's as a cemetery when Henry purchased her lots in 1997. The certificate documenting Henry's purchase was headed St. Joseph's Catholic Cemetery and was signed by the Pastor of St. Joseph's as Superintendent of *St. Joseph's Catholic Cemetery*. The front of the certificate states Henry took the lots subject to the conditions, restrictions and regulations on the reverse side. Those conditions provided, *inter alia*, "[t]he Superintendent shall have full and exclusive control over said cemetery, and shall direct and control the laying out of walks, roadways, lots and everything connected with the use, improvement and ornamentation of said Cemetery." Under the stated conditions, the decision of the Bishop or Administrator of the Diocese as to any disagreement between the Superintendent and any owner was final and conclusive.

¶ 7 The essence of Henry's argument is that the 1907 conveyance, and the conditions on the certificate she received from Church, are of no force and effect because City had no authority to sell the cemetery lands to a religious organization for a religious cemetery. We find no need to consider that argument because Henry has failed to show standing to assert it. Presuming, without deciding, City had no authority to make the 1907 conveyance, our Legislature has provided the remedy for such unauthorized transfer of property in 62 O.S.1991 § 373.

¶ 8 Section 373 authorizes a *resident taxpayer* of an affected city to file an action for the recovery of the city's property transferred pursuant to an unauthorized or unlawful contract. While there are certain statutory prerequisites to such action, and limitations thereon, they are not necessary to our consideration because the record shows Henry is not a resident taxpayer of Muskogee. Henry does not assert the 1907 conveyance was void, nor does she cite legal authority to support that proposition. For the trial court to grant the relief she requested, the court would have to order return of the cemetery property to City. This would effectively and improperly circumvent the requirements of § 373.

¶ 9 Under the facts here, we find no authority to rescind the 1907 deed from City to Church some 92 years after title has been conveyed. When Church in turn conveyed title to the cemetery lots to Henry, she was put on actual notice of conditions and restrictions which passed with the title. Church's representative, the cemetery superintendent, retained "full and exclusive" control over "everything connected with the use, improvement and ornamentation" of the cemetery. Disagreements between lot owners and the superintendent are decided by the Bishop or Administrator of the Diocese, whose decision is "final and conclusive on all parties."

¶ 10 Henry's argument against enforcement of the express conditions and restrictions of the conveyance from Church is they violate the prohibition, in 11 O.S.1991 § 26–105, against religious tests on ornamentation. Again assuming, without deciding, Church is imposing a religious test upon Henry's monument, such test is not prohibited because St. Joseph's Cemetery is controlled by a church organization, not a municipality. Section 26–105 therefor has no applicability.

¶ 11 As her second appellate proposition, Henry contends Article 2, Section 5 of the Oklahoma Constitution prohibits the use of public funds for the benefit of the Catholic Church. More specifically, she complains City's public money is being spent to operate and maintain St. Joseph's Catholic Cemetery. Our Constitution does prohibit the use of *public money for the use, benefit or support* of a church or system of religion, but a determination of whether City did so in this case has no relevance to the relief Henry is requesting. Whether the City is mowing the grass in St. Joseph's Cemetery, even if using public funds, cannot be determinative of Church's right to demand Henry remove the controverted monument. That is a separate matter which we need not decide here, particularly in view of Henry's lack of standing as a non-resident.

¶ 12 Granting or denying injunctive relief is generally within the sound discretion of the trial court and a judgment issuing or refusing to issue an injunction will not be disturbed on appeal unless the lower court has abused it discretion or the decision is clearly against the weight of the evidence. *Sharp v. 251st Street Landfill, Inc.,* 1996 OK 109, 925 P.2d 546. We find no abuse of the trial court's discretion and its decision is not against the clear weight of the evidence. Accordingly, the trial court's judgment is AFFIRMED.

CARL B. JONES, C.J., and ADAMS, J., concur.